# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**ERNESTINE HERNANDEZ o/b/o**
**VICTORIA R. RAMIREZ (minor)**

       **Plaintiff,**

**vs.**

                                         **Civ. No. 04-0872 LCS**

**JO ANNE B. BARNHART,**
**COMMISSIONER OF SOCIAL SECURITY,**

       **Defendant.**

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court upon Plaintiff's Motion to Reverse and Remand Administrative Agency Decision (Doc. 12), filed December 14, 2004. Plaintiff filed a Memorandum in support of her motion (Doc. 13); Defendant filed a Response on January 21, 2005 (Doc. 14), and Plaintiff filed her Reply on February 14, 2005 (Doc. 15). Plaintiff brought this action on behalf of her minor daughter, Victoria R. Ramirez (Victoria). The parties have consented to a United States Magistrate Judge conducting all proceedings in this matter, pursuant to 28 U.S.C. § 636(c). The United States Magistrate Judge, having considered the Motion, the Memorandum, the Response, the Reply, the administrative record, and the applicable law, and being fully advised, finds the Plaintiff's motion should be **GRANTED**.

### Standard of Review

The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether she applied the correct legal standards. *See Hamilton v. Sec'y of Health and Human Servs.,* 961 F.2d 1495, 1497-98 (10th Cir. 1992).

Evidence is substantial if a reasonable mind might accept [it] as adequate to support a conclusion. *Andrade v. Sec'y of Health and Human Svcs.*, 985 F.2d 1045, 1047 (10th Cir. 1993)(quoting *Broadbent v. Harris*, 698 F.2d 407, 414 (10th Cir. 1983)). A decision of an ALJ is not supported by substantial evidence if the evidence supporting the decision is overwhelmed by other evidence on the record. *See Gossett v. Bowen*, 862 F.2d 802, 805 (10th Cir. 1988).

An individual under the age of 18 is considered disabled if that child has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(C). A sequential three-step evaluation process governs the ALJ's determination of whether a child satisfies this statutory standard. *Brown v. Callahan*, 120 F.3d 1133, 1135 (10th Cir. 1997). The ALJ must determine, 1) that the child has not engaged in substantial gainful activity, 2) that the child has a severe impairment or combination of impairments, and 3) that the child's impairment meets or equals an impairment listed in Appendix 1, Subpart P of 20 C.F.R. Pt. 404 (listings). *See* 20 C.F.R. § 416.924(a).

If the child's impairment or impairments do not meet, medically equal, or functionally equal in severity a listed impairment, the child is not disabled. *See* 20 C.F.R. § 416.924(d)(2). An impairment is functionally equivalent to a listed impairment if a claimant has an extreme limitation in one area of functioning or marked limitations in two or more areas of functioning. *See* 20 C.F.R. § 416.926a(b)(2). A marked limitation is defined as being more than moderate but less than extreme and it interferes seriously with a child's ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(2)(i). An extreme limitation for a child means that her impairment "interferes very seriously with [her] ability to independently initiate, sustain, or complete activities"

2

and that her day-to-day functioning is very seriously limited.  20 C.F.R. § 416.926a(e)(3)(i).  In assessing functional equivalence, the ALJ must assess all relevant factors including, 1) how well the child initiates and sustains activities and how much extra help he needs, 2) how the child functions in school, and 3) how the child is affected by medications or other treatment.  *See* 20 C.F.R. § 416.926a(a)(1)-(3).  Further, a child's functioning is assessed in several domains, 1) acquiring and using information, 2) attending and completing tasks, 3) interacting and relating with others, 4) moving about and manipulating objects, 5) caring for self, and 6) health and physical well-being.  20 C.F.R. § 416.926a(b)(1)(i)-(vi).

**Procedural History**

Plaintiff, on behalf of her daughter, Victoria, now 13, filed an application for Supplemental Security Income ("SSI") on February 27, 2002, alleging disability commencing on May 4, 1992.  R. 47.  Plaintiff alleged Victoria was disabled due to behavioral issues, slow learning, and stuttering.  R. 64, 86, 173.  Victoria's application was denied at the initial level on May 23, 2002 and at the reconsideration level on January 13, 2003.  R. 30-31.  Plaintiff appealed the denial by filing a Request for Hearing by Administrative Law Judge and the ALJ held a hearing on October 17, 2003, at which Plaintiff and Victoria appeared and were not represented by counsel.  R. 245-261.

At the hearing, Victoria testified that she liked school, liked sports, and was getting A's and B's in her classes.  R. 247.  She stated that she took Adderall and Zoloft and that the Zoloft sometimes helps but that she still felt angry at times.  R. 251.  Plaintiff testified that her daughter had difficulty at school and that she had recently gotten into an argument with a girl at school.  R. 255. She also testified that by the time Victoria comes home from school, her medications wear out and she becomes angry and has problems with other students on the bus.  R. 256.

3

The ALJ issued his Decision on November 26, 2003 finding that Victoria was not disabled. R. 21. He found that she had not engaged in substantial gainful activity since the alleged onset date, that her learning disability and emotional/behavioral disorder were severe but that they did not meet the or medically equal the criteria for any impairment listed in Appendix 1, Subpart P, Part 404. *Id.* He further found that there was no evidence that Victoria's impairments were functionally equivalent to the listings. *Id.* Plaintiff appealed the decision to the Appeals Council which declined further review on June 29, 2004. R.6-7. Hence the decision of the ALJ became the final decision of the Commissioner for purposes of judicial review. On August 2, 2004, Plaintiff filed an action in this court, seeking judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

**<u>Administrative Record</u>**

A speech language evaluation dated on December 18, 1995, when Victoria was four years old showed that her scores were two standard deviations below the mean, which was indicative of a language deficit in areas including vocabulary, concepts, integrative thinking skills, syntax, and morphology. R. 152. Victoria's articulation and fluency skills were within normal limits. R. 153. The evaluation noted that determination regarding placement in a special education program was to be determined by an Individual Education Plan ("IEP") Committee. *Id.*

A multi-disciplinary evaluation report from the Las Cruces Public Schools Special Education Department dated December 21, 1995 stated that Victoria received a 99 on the Kaufman Mental Processing Composite IQ and other testing revealed that Victoria had language deficits but that her articulation and fluency skills were within normal limits. R. 156.

A report from the Las Cruces Public Schools Special Education Department dated January 29, 1997 stated that Victoria's language speech therapy was going to be reduced to 30 minutes per

week instead of a full hour per week because of the significant gain she had made.  R. 146.  It appears from the record that Victoria's speech therapy began in 1996.  R. 147.

A summer report card dated July 22, 1999 indicated that Victoria had difficulty: taking responsibility for herself, relating well to other students, exercising self control, handling conflicts, respecting other students, following established rules, working independently and finishing work on time.  R. 137.

An evaluation completed by Lillian Grijalva, Speech Language Pathologist, while Victoria was in second and third grades indicated that the Goldman Firstoe Test of Articulation was administered to assess Victoria's ability to produce target speech sounds.  R. 133, 134.  The test demonstrated that Victoria was in the 32nd percentile compared to other females her age.  R. 134.  The report further stated that Victoria's fluency skills were rated mild in severity, that her speech difficulties did not appear to affect her classroom performance, and that she did not meet the criteria for special education service related to an articulation or fluency disorder.  R. 135.

A diagnostic evaluation report from the Special Education Department at Jornada Elementary School dated on November 12, 2001 stated that Victoria was referred for an evaluation by Mr. Uribe, her fourth grade teacher, due to her lack of progress in reading and math as well as her difficulties with performance and attention.  R. 118.  Victoria's grades were mostly B's and C's.  R. 119.  The report noted that during class Victoria interrupted Mr. Uribe several times and had difficulty following instructions.  R. 120.  During the testing, she was easily distracted and "constantly needed to be redirected to the task."  *Id.*  She also tried to get out of the testing by making excuses and hurried through tasks without applying herself.  R. 120, 126.  The Kauffman Assessment Battery for Children ("K-ABC") assesses the intellectual ability of children and provides an overall performance

of general functioning by measuring sequential processing and simultaneous processing.  R. 121.  The KABC revealed Victoria's overall performance to be in the average range of general functioning.  R. 122.  The Woodcock-Johnson Tests of Achievement-Revised ("WJ-III") are comprehensive academic achievement tests that measure a student's learning across many areas of academic curriculum.  *Id.*  The testing revealed that Victoria's overall reading skill was below average, that she decoded with no particularly accuracy, and that her reading speed and fluency were well below average.  R. 124.  Victoria's oral language scores were also below average and she demonstrated difficulty understanding and responding appropriately to directions.  *Id.*  Victoria's math skill was below average as well, with her ability to solve problems less developed than her ability to do simple calculations.  R. 124-125.  Finally, Victoria's written language skill was "a little low but not significantly so."  R. 125.  In short, the evaluation revealed that Victoria's functioning was in the average range of overall cognitive ability but that her academic achievement testing in reading, math, and oral language were below average.  *Id.*  The evaluation ultimately found that Victoria was eligible for special education at that time and that the IEP Committee would make the final determination. R. 126.

Mr. Uribe completed a Disability Determination Services teacher questionnaire which indicated that Victoria always: was excitable and impulsive, had difficulty completing tasks, was distracted, was restless, had difficulty concentrating, and had excessive demands for attention.  R. 159, 160.  She was also often times argumentative with teachers, had temper outbursts and talked out of turn.  R. 159.  Mr. Uribe also indicated that while Victoria was in fourth grade, her reading was at a third grade level and her math was at a second grade level.  *Id.*  Star McKinney, Victoria's

special education case worker also completed a Disability Determination Services questionnaire which indicated, like Mr. Uribe's questionnaire, that while Victoria was in fourth grade, her reading was at a third grade level and her math was at a second grade level.  R. 161.  Ms. McKinney also noted that Victoria had difficulty concentrating, had excessive demands for attention, became easily frustrated, and underachieved.  R. 162.  An addendum to these reports indicated that Victoria did not complete academic work without redirection and that sometimes she had trouble expressing her ideas in complete thoughts.  R. 164.

On February 1, 2002, the Las Cruces Public Schools Special Education Department determined that Victoria was eligible for special education services due to her learning disability.  R. 194.  Instructional goals were then outlined for Victoria in various academic areas and the report further indicated that Victoria would spend 11-50 percent of her instructional week with special education service providers and 21-60 percent of her instructional week would be spent in a classroom with general education peers.  R. 196-200.  The report also indicated that Victoria did not have behaviors that impeded her learning or that of others.  R. 201.

A Childhood Disability Evaluation form indicated that Victoria failed to go to her scheduled Consultative Exam on May 23, 2002. R. 32, 167.

A police report dated on September 16, 2002 defined Victoria as an incorrigible child and stated the police department was called because Victoria had broken a window, had cut her hand, was out of control, and was having behavioral problems.  R. 108.  The report further indicated that when the officer arrived at Victoria's home, she was "frantically running from one side of her bedroom to the other." *Id.*  The officer further indicated that Victoria was distraught, crying and screaming. *Id.*

The report reveals that the outburst occurred when Victoria's mother had insisted that Victoria do her homework and she refused. *Id.*

A psychological evaluation report performed by Stuart Kelter, Psy.D., for the Las Cruces Public Schools and dated on October 28, 2002, outlined Victoria's performance on the K-ABC and the WJ-III taken in November 2001, which suggested that Victoria had average intellectual potential with no obvious weakness but that achievement tests indicated below average reading, math, and written language scores. R. 184. The report stated that at the beginning of the evaluation, Victoria seemed dazed and disoriented but "her demeanor quickly changed to engaging, bubbly, and effusive." R. 185. She demonstrated limited ability to control her impulses and sometimes regretted her responses. *Id.* Data from testing revealed that Victoria's emotions and psychological conflicts were similar to those of a two or three-year-old. R. 186. The report further stated that Victoria had great difficulty maintaining self-control and focusing on her work at school and that her continual interruptions during class had alienated her from her classmates. R. 187. The evaluation indicated that Victoria qualified as having emotional and behavioral disorder under federal law. R. 188. Dr. Kelter found that Victoria exhibited to a marked degree: an inability to build or maintain satisfactory relationships with her teachers and peers as well as inappropriate types of behavior or feelings under normal circumstances. *Id.*

On December 16, 2002, Victoria was suspended for one day because she threw rocks at her classmates during physical education and three boys were hit with rocks. R. 212, 213.

A Childhood Disability Evaluation Form dated January 8, 2003 indicated that Victoria had had average cognitive ability with some academic delay and a less than marked impairment in the

domain of acquiring and using information.  R. 217.  The evaluation further stated that Victoria had

no limitation in attending and completing tasks, interacting and relating with others, or caring for

herself.  R. 217, 218.

A letter dated January 30, 2003 from Wendi J. Hammond, Principal of Jornada Elementary

School, stated that Victoria received individual and group therapy at school because of her "poor

behavior and problems with peer relations."  R. 94.  Ms. Hammond also noted that Victoria also had

difficulties with adult authority figures, including her mother.  *Id.*

On May 1, 2003, a School Bus Incident Report was filed by Peg Fraser, Victoria's bus driver

at Jornado Elementary School.  R. 95.  Ms. Fraser indicated that she had received complaints from

students and parents because Victoria would  pick on students while on the bus.  *Id.*  Ms. Fraser

moved Victoria to the front of the bus and that seemed to remedy the problem but indicated that

Victoria failed to remain seated, refused to obey her, made unnecessary noise, and was discourteous.

*Id.*

A medical report dated May 23, 2003 diagnosed Victoria with suicide ideation and self-

destructive behavior.  R. 222-223.

A police report dated August 2, 2003 stated that Victoria was upset when a trip to El Paso

was canceled and started throwing items in her residence "based on the fact that she was upset."  R.

111.  Victoria had also pushed her mother during the outburst.  *Id.*  Victoria was directed by her

mother and the officer to go to a nearby friend's house until she calmed down.  *Id.*

Minutes from a Parent Conference dated October 2, 2003 at Picacho Middle School indicated

that Victoria had problems with other students but that she was working hard and bringing up her

grades, which ranged from B's in gym to C's in social studies, composition, and math.  R. 96.  The Minutes also took note of Victoria's speech problems and indicated that the school would reassess her qualification for help with speech and language services.  *Id.*

A Behavior Intervention Plan from the Law Cruces Public Schools Department of Special Education, which was presented to the Appeals Council and was dated May 15, 2003, revealed that Victoria would argue and want the last word and highlighted the faults of others.  R. 240.  Victoria also had difficulty paying attention during classroom lectures or when given instruction.  R. 241.

An IEP dated December 11, 2003, which was also presented to the Appeals Council, indicated that Victoria was in sixth grade and had been placed in a behavior modification program at Picacho Middle School.  R. 225.  The report stated that Victoria was sociable and got along well in social settings and with friends.  *Id.*  Both her reading and her math were between a fourth and fifth grade level.  *Id.*  Victoria was helpful and responsible and had the ability to understand complicated social situations and her behavioral problems occurred mostly when she thought things were not going the way she wanted them to.  R. 226.  The report stated that Victoria needed to learn a more respectful and assertive way to communicate her wants and needs and that her behavior inhibited her learning as well as that of her classmates.  *Id.*  Victoria also needed to improve her focus and pay more attention to her assignments.  R. 225.  The report also detailed Victoria's involvement with social services at the school.  R. 227.  Victoria's interaction during the meetings were both cooperative and appropriate.  *Id.*  The IEP indicated that Victoria would benefit from an extended school year program.  R. 236.

An undated list of Claimant's Recent Medical Treatment, Medications, and Work Background

indicated that Victoria was taking Adderall for her behavioral disorder, and Zoloft for depression. R. 103, 104, 185.

**Analysis**

In her Motion to Reverse or Remand Agency Decision (Doc. 12), filed December 14, 2004, Plaintiff alleges that the ALJ's decision was not supported by substantial evidence for several reasons. First, Plaintiff asserts that the ALJ erred in finding that Victoria has a less than marked limitation with regard to the domain of interacting and relating with others. R. 21; *See* 20 C.F.R. § 416.926a(b)(2). Plaintiff argues that Victoria has an extreme impairment in the domain of interacting and relating with others, and as such her impairment is functionally equivalent to a listed impairment. Doc. 12 at 5. Second, Plaintiff contends that even if Victoria's impairment in the domain of interaction and relation to others is not extreme, but only marked, her impairment is still functionally equivalent to a listed impairment because she has multiple marked impairments. Doc. 12 at 9; *See* 20 C.F.R. § 416.926a(b)(2). Specifically, Plaintiff alleges that Victoria has additional marked impairments in the domains of attending and completing tasks and acquiring and using information and that the ALJ erred in finding that Victoria had a less than marked impairment in both of these domains. Doc. 12 at 9-10; R. 21. Finally, Plaintiff asserts that the Appeals Council failed to discuss or analyze additional evidence that was submitted to it and as a corollary, Plaintiff stated that the ALJ should have advised Plaintiff and Victoria that they were entitled to have a representative help them. Doc. 12 at 11-12.

**Functional Equivalence**

Plaintiff contends that Victoria has an extreme impairment in the domain of interacting and relating with others.  *See* R. 21.[1]  Plaintiff next alleges that Victoria has a marked impairment in the domain of attending and completing tasks.[2]  *See* R. 21.  Last, Plaintiff contends that Victoria has a marked impairment in the domain of acquiring and using information.[3]  *See* R. 21.

The Court notes that Victoria was not represented by counsel at the ALJ hearing and where a Social Security claimant appears before an ALJ pro se, the ALJ has a heightened duty to investigate the issues presented and to develop the record on those issues.  *Younger v. Shalala*, 30 F.3d 1265, 1267 (10th Cir. 1994).  The duty is one of inquiry, to inform the ALJ of the relevant facts and to hear the claimant's version of those facts.  *Henrie v. United States Dep't of Health & Human Servs.*, 13 F.3d 359, 360-61 (10th Cir. 1993).  This duty, however, is not a panacea for claimants that requires reversal in any matter where the ALJ fails to exhaust every potential line of questioning.  *Glass v.*

---

[1]  This domain measures how well Victoria initiates and sustains emotional connections with others, develops and uses language, cooperates with others, complies with the rules, responds to criticism, and respects and takes care of the possessions of others.  20 C.F.R. 416.926a(i).  Considering Victoria's age group, she should be able to develop lasting friendships with her peers, understand how to work in groups to create projects and solve problems, share ideas, and tell stories.  20 C.F.R. 416.926(a)(i)(iv).

[2]  This domain measures how well Victoria is able to focus and maintain her attention, and how well she begins, carries through, and finishes her activities.  20 C.F.R. 416.926a(h).  Considering the relevant age group, Victoria should be able to focus her attention in order to follow directions, remember and organize school materials, and complete classroom and homework assignments. 20 C.F.R. 416.926a(h)(iv).  She should also be able to concentrate and not make careless mistakes in her work, change activities without distracting herself or others, and stay on task.  *Id.*

[3]  This domain measures how well Victoria is able to acquire or learn information and how well she uses the information she learns.  20 C.F.R. 416.926a(g).  Considering the relevant age group, Victoria should be able to learn to read, write, and do math, and discuss history and science.  20 C.F.R. 416.926a(g)(iv).  She should also be able to share information and ideas with others, by asking questions and expressing her own ideas.  *Id.*

*Shalala*, 43 F.3d 1392, 1396 (10th Cir. 1994).  It is not the ALJ's duty to become the claimant's advocate.  *Henrie*, 13 F.3d at 361.

In his opinion, the ALJ noted Victoria's history of emotional/behavioral disorder as well as assessments by her teachers which indicated issues of talking out of turn, arguing with teachers, defiant behavior, temper outbursts, excitability and impulsivity, aggressiveness, fighting with others, a one day in school suspension, and possible suicide ideation.  R. 20.  However, based on Victoria's testimony that she liked going to school, attended regularly, liked sports, was getting A's and B's in her classes, and that Zoloft was helping her control her anger, he found that she had a less than marked impairment in the domains of interacting and relating with others, attending and completing tasks, and acquiring and using information.  *Id.*  The ALJ did not discuss these domains separately, nor did he utilize the specific guideposts as set forth in the regulations and as outlined in footnotes 1, 2, and 3, *supra*, in order to assess Victoria's functioning in each of these three domains.

Also of note, the ALJ found that Victoria's impairments were less than marked because the evidence revealed fewer incidents of fighting or anger outbursts as well as improved functioning in classes.  *Id.*  However, the ALJ does not indicate what evidence, aside from Victoria's testimony, revealed fewer incidents of fighting or anger outbursts.  *See*, R. 20.  In fact, just two months before Victoria's testimony, a police report stated that while at home Victoria was upset began throwing objects and a report card dated just two weeks before the hearing revealed that she was working to improve her grades but that she was receiving B's and C's in school.  R. 96, 111.  The ALJ did not probe Victoria's testimony with regard to inconsistencies between that testimony and the record and thus, the ALJ did not satisfy his duty to adequately apprise himself of pertinent facts and circumstances.  *Glass v. Shalala*, 43 F.3d at 1396 (*citing Younger ex rel. Younger v. Shalala*, 30 F.3d

13

1265, 1269 (10th Cir. 1994)); *See also*, *Henrie*, 13 F.3d at 361 (ALJ failed to adequately probe claimant and develop record).  Moreover, the record contradicts Victoria's testimony.  "[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1009-1010 (10th Cir. 1996).  The ALJ failed to discuss this objective evidence as well as other probative evidence, such as Dr. Kelter's assessment in October 2002 that Victoria had a marked inability to build or maintain satisfactory relationships with her teachers and peers.  R. 188. As such, I find that the brief testimony given by a twelve-year-old *pro se* claimant, reviewed in conjunction with the record, leads to a conclusion that the ALJ did not fulfill his heightened duty of inquiry and that he failed to fully investigate the issues presented and to develop the record on those issues.  *See Younger v. Shalala*, 30 F.3d at 1267.  Thus, the ALJ's findings that Victoria had less than marked impairments with regard to interacting and relating with others, attending and completing tasks, and acquiring and using information are not supported by substantial evidence and the case must be remanded for further proceedings specific to these domains.  The inconsistencies between Victoria's testimony and the record should be fully discussed and each of the domains relevant in this case should be addressed separately and with specificity.  Since I find remand appropriate on these grounds, I will not reach the remaining issue raised by Plaintiff with regard to the record before the Appeals Council.

### Conclusion

Because I conclude that the ALJ did not follow the correct legal standards in assessing Plaintiff's impairments with regard to the domains of interacting and relating with others, attending and completing tasks, and acquiring and using information, Plaintiff's Motion (Doc. 12) is well-taken

and  I reverse and remand for further proceedings so that the ALJ can reassess Victoria's level of impairment with regard to these specific domains in order to determine whether her impairments functionally equal in severity a listed impairment.

A Judgment consistent with this Opinion shall issue.

**LESLIE C. SMITH**
**UNITED STATES MAGISTRATE JUDGE**